**UNITED TECHNOLOGIES CORP., et al**

v.

**AMERICAN HOME ASSURANCE COMPANY**

**No. 2:92CV267 JBA.**

United States District Court, D. Connecticut.

March 15, 2001.

Bernard Green, Green & Gross, P.C., Bridgeport, CT, for Bernard Green.

David B. Zabel, Stewart I. Edelstein, Marci J. Silverman, Stuart M. Katz, Cohen & Wolf, P.C., Bridgeport, CT, Myra E. Lobel, Mound, Cotton, Wollan & Greengrss, New York, NY, Kay M. Brady, Stephen M. Goldman, Carolyn M. Branthoover, Thomas J. Smith, Robert Bruce Allensworth, David F. McGonigle, Keith A. Fabi, Michael G. Zanic, Evan A. Bloch, David T. Fisfis, Diane B. Hopper, Peter J. Kalis, David R. Cohen, Mary Beth Collery, Thomas M. Reiter, John P. Englert, Michael S. Nelson, Alan W. Tamarelli, Richard W. Hosking, Eric S. Lammers, Heath B. Monesmith, Joseph C. Safar, Jeanne M. Sauer, David P. Anderson, Douglas J. Simmons, Kirkpatrick & Lockhart, Pittsburgh, PA, Paul R. Hurst, Steptoe & Johnson, Washington, DC, Patrick J. McElhinny, Terry Budd, Amy O. Goodman, Brian F. Saulnier, Joseph R. Gette, Erica D. Merkow, Douglas A. Pearson, Angelica R. Hopwood, Kristen M. Del Sole, Richard D. Dworek, Matthew R. Swenson, James E. Hannon, Jr., Paul K. Stockman, Joseph L. Luciana, III, Julie S. Greenberg, Leigh A. Ferron, Melody A. Hamel, Kirkpatrick & Lockhart, Pittsburgh, PA, Andrew C. Glass, John C. Blessington, Peter N. McIsaac, Boston, MA, Edward P. Sangster, Kirkpatrick & Lockhart, San Francisco, CA, Jonathan B. Morton, Kirkpatrick & Lockhart, Miami, FL, for Plaintiff.

## MEMORANDUM OF DECISION

ARTERTON, District Judge.

This complex and extended dispute over who will pay for the costs of environmental clean-up and remediation pits United Technologies Corporation and a number of its subsidiaries (collectively, UTC) against its property insurer, American Home Assurance Company (AH). Familiarity with the factual and procedural background of this case is presumed from the Court's prior rulings. *See UTC v. American Home,* 989 F.Supp. 128 (D.Conn.1997) (Ruling on Motions for Summary Judgment); Doc. # 953 (Ruling Denying Motion for Judgment as a Matter of Law). After a jury verdict in favor of UTC on the Windsor Locks site, a myriad of post-trial motions were filed and decided, including AH's motion to reduce the jury verdict to

account for UTC's settlements with its liability insurers in two other state court actions. *See UTC v. American Home,* 118 F.Supp.2d 190 (D.Conn.2000) (Doc. # 1020). After an *in camera* review of the settlement agreements in those cases, this Court granted defendant's motion for a reduction, although not to the extent sought by AH. Doc. # 1229. This Court, noting the "dearth of information before the Court and the very general language of the settlement agreements," Ruling at 22, nonetheless concluded that "it st[ood] to reason that some portion of the clean-up costs awarded by the jury in this case" were encompassed by the settlements in the state court action, Ruling at 18, and therefore reduced the verdict by a formula that sought to do "rough justice" to the parties' claims and defense. Ruling at 23. Such justice was apparently exceedingly rough, as both parties now seek reconsideration of the Court's ruling.

## UTC's Motion for Reconsideration (Doc. # 1231)

UTC seeks reconsideration on the grounds that the Court adopted evidentiary presumptions prejudicial to UTC and unsupported by the law. Specifically, UTC charges that AH was permitted a reduction for an affirmative defense that was never pleaded nor proved by a preponderance of the evidence, a defense regarding which UTC had no notice and consequently took no discovery. According to UTC, the Court "presumed" the existence of double recovery, rather than requiring AH to bear its burden of proving its entitlement to a reduction, and held the evidentiary shortfall against UTC, without providing it the opportunity to conduct sufficient discovery to rebut that presumption. UTC relies on a transcript of a posttrial telephonic status conference in which this Court directed UTC to respond to discovery requests regarding prior settlements, but declined to fully re-open discovery on the issue such that UTC could have taken discovery from AH regarding how the settling insurers, including AH as a liability insurer, had internally allocated the settlement payments. Jan. 27, 2000 Status Conf. Tr. at 97. UTC also argues that it is entitled to a jury trial on the offset issue, because both parties "demanded jury trials as to all counts and all issues in the case." Pl. Mem. (Doc. # 1232) at 16.

## AH's Motion for Reconsideration (Doc. # 1233)

AH is not as ardent in seeking reconsideration, given that the Court's previous Ruling reduced the verdict amount for which it was liable by nearly one million dollars. The defendant does, however, claim an error in the calculation employed by the Court. Specifically, AH argues that the proper ratio to determine the reduction is the ratio between UTC's total owned site claims and UTC's *cost claims* at the Windsor Locks site, rather than the ratio utilized by the Court measuring the relationship between UTC's total owned site claims and the Windsor Locks jury verdict amount. AH also submits "newly discovered evidence" that it charges provides grounds for increasing the reduction—documents submitted to the federal government by UTC that allegedly describe the amount spent on remediation at particular sites for purposes of determining federal contracting rates.

## Discussion

The Second Circuit has stated that reconsideration of a previous ruling is appropriate under certain conditions: an intervening change in controlling law, new evidence, or the need to correct a clear error of law or to prevent manifest injustice. *See United States v. Sanchez,* 35 F.3d 673, 677 (2d Cir.1994). For the reasons that follow, the Court concludes that

reconsideration is appropriate, and that the Court's prior ruling granting defendant's Motion for a Reduction in the Windsor Locks Verdict should be vacated.

### 1. *The Reduction Defense Need not be Plead*

■ UTC's first line of argumentation focuses on the fact that AH did not plead an affirmative defense of equitable offset, and posits that the Court should have denied AH's motion "on this basis alone." In its previous ruling, the Court concluded that the affirmative defense based on the "other insurance" clauses in the policies was sufficient to notify the plaintiff that a reduction would be sought. Ruling at 5. The Court agrees with plaintiff that this conclusion elided the distinction between a contractually-based defense seeking allocation amongst several policies that were concededly triggered, as was the case in *Koppers v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir.1996), and what defendant sought in the case at bar. AH sought a post-trial reduction in the jury verdict to account for UTC's settlements with other carriers under different types of policies. In the Court's view, the relief sought in defendant's motion is more analogous to a Rule 59 remittitur motion, seeking reduction of a verdict made "excessive" by double recovery, rather than a contract-based claim under the terms of a policy. *See, e.g., Imbrogno v. Chamberlin*, 89 F.3d 87 (2d Cir.1996) (district court should have construed "setoff" motion seeking to reduce jury verdict by amount of previous settlement with second tortfeasor as a remittitur motion under Rule 59).

Plaintiff's argument that defendant's reduction motion should be denied due to AH's failure to plead the claim as an affirmative defense is nonetheless unavailing. In the Court's prior Ruling it noted the confusion in the nomenclature employed by the parties. AH's use of the term "setoff" provoked UTC to cite numerous cases holding that setoffs or counterclaims must be raised in the pleadings. *See, e.g., Peters Production v. Dawson*, 182 Conn. 526, 527, 438 A.2d 747 (1980). *Peters Production* and the cases relying on it, however, involved setoffs for *mutual* debts between the parties, as defined by Conn. Gen.Stat. § 52–139. *See Elis v. Rogers*, 15 Conn.App. 362, 365, 544 A.2d 663 (Conn. App.1988) ("The law of setoff is governed by General Statutes § 52–139. . . . A condition precedent to the application of § 52–139 is that the defendant's claim arise from a debt due by the plaintiff. It is the defendant's burden to demonstrate its right of setoff by affirmatively and adequately alleging such a claim in the pleadings.") (internal citations omitted). The nature of the reduction sought by AH here is not "the existence of a debt due and owing [it] from the plaintiff." *Id.* at 365, 544 A.2d 663. Accordingly, Connecticut case law requiring "setoffs" to be affirmatively plead does not defeat AH's claim to a reduction in the jury verdict. Properly characterized, AH is seeking a credit against the amount of its liability to the extent the payment of prior settlements would result in "double recovery" to UTC for the covered costs, not a "setoff" as defined in Connecticut law. *See Imbrogno*, 89 F.3d at 90 (doctrine of "setoff" under Connecticut law had no applicability in case seeking a reduction in a jury verdict to account for prior settlement).

Although the Court now concludes that AH was not required to plead its intention to seek a reduction as an affirmative dissent, the previous Ruling was in error to the extent it relied on the "other insurance" clauses as grounds for reducing the verdict. The policy provisions at issue provide that "[AH] shall be liable for loss or damage only to the extent of value in excess of the amount recoverable from

such other insurance" and that "this policy only covers for the excess of any other collectible insurance...." Trial Ex. P–1 (quoted at Pl. Mem. p. 5). As the Southern District of New York observed in *E.R. Squibb & Sons v. Accident and Cas. Ins. Co.*, No. 82 CIV 7327, 1997 WL 251548 (S.D.N.Y. May 13, 1997), the language of such clauses provides no assistance to insurers seeking a reduction to account for previous settlements, because settlement agreements are not contracts of insurance. *Id.* at *1. The *Squibb* court concluded that:

> The only amounts properly allocated to the settling insurers as "valid and collectible" insurance are those that the law applicable to those policies, including the triggers of coverage which have been established in this case, would obligate those insurers to pay.

*Id.* The court then calculated the *pro rata* share of each insurer, including the settling insurers, and treated each settling insurer's portion as satisfied by the settlements, regardless of the actual settlement amounts, despite the possibility that such a rule would result in Squibb receiving a double recovery. *Id.* at *2. The Second Circuit recently affirmed the decision "for substantially the reasons given in Judge Martin's opinion," noting that "in the particular circumstances of [the] case, the district court took the best path available through this complex area." *E.R. Squibb & Sons v. Lloyd's & Companies, et al.*, Nos. 97–9468(L); 97–9470(CON); 97–9472(CON); 97–9474(CON); 97–9476(CON); 97–9484(XAP); 99–7812(L); 99–7842(CON); 99–7846(CON); 99–7856(CON); 99–7878(CON); 99–7845(XAP), 241 F.3d 154, 2001 WL 138332 (2d Cir. Feb. 20, 2001). AH, responding to UTC's citation of the district court's opinion in *Squibb*, seeks to distinguish the case as a "lone exception" that is "against the great weight of authority." Def. Mem. at p. 4, n. 8. The Second Circuit's affirmance

demonstrates to the contrary, and the reasoning of *Squibb* is persuasive to this Court. The Court therefore concludes that any entitlement to a reduction on AH's part does not depend on the "other insurance" clauses, but is instead an equitable remedy predicated on a showing that double recovery will result absent such a reduction.

### 2. *Burden of Proof*

The Court also finds instructive a recent Washington Supreme Court decision addressing insurance coverage for costs associated with hazardous waste cleanup. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115 (2000). As in this case, the trial judge in *Weyerhaeuser* divided the trial of the insured's claims into phases based on location of the sites at issue. Prior to the Phase I trial, all but one of the insurance company defendants settled with the insured (Weyerhaeuser), and after three trials awarding Weyerhaeuser nearly $8 million on its claims against the remaining insurer, that insurer, like AH here, sought to credit settlement funds received by the insured from the other insurance carriers by reduction in the verdict against it. 15 P.3d at 125. The trial court denied any reduction, and the Washington Supreme Court affirmed, concluding that the insurer bore the burden of demonstrating a double recovery. The court noted that "[a]s the insurers paid Weyerhaeuser for a release from an unquantifiable basket of risks and considerations, we cannot say the settlements simply constituted payment for Weyerhaeuser's cleanup costs." *Id.* at 126. The court declined to impose the burden for proving that it had not received a double recovery on the insured, because "such a rule would encourage litigation and reward the nonsettling insurer for refusing

to settle." *Id.*[1] To the extent the insurer relied upon the policies' "other insurance" clauses, the court also noted that "[t]he burden of showing entitlement to an exclusion of liability based upon the existence of other insurance is properly [the insurer's]." *Id.* at 127.

After concluding that the insurer bore the burden of establishing a double recovery, the Washington Supreme Court also upheld the trial court's determination that the insurer had not carried that burden, because the "trial court's finding that Weyerhaeuser has not been made whole [was] supported by substantial evidence." The insured had submitted evidence demonstrating that its past cleanup costs greatly exceeded the settlement amounts received from its other insurers, which the insurer had failed to rebut. The court accordingly concluded that the trial court had properly denied the insurer's request to "offset" settlements received from other insurers. *Id.*

█ *Weyerhaeuser*'s reasoning is persuasive, and it substantially undermines this Court's reliance on a Washington Appellate Court decision suggesting that the insured bore the burden of allocating settlement amounts, and that its failure to do so entitled the insurer to a offset equal to the full settlement amount. *See Litho Color v. Pacific Employers Ins. Co.*, 98 Wash. App. 286, 294, 991 P.2d 638 (1999). The Court concludes that based on the rationale articulated in *Weyerhaeuser*, and implicitly endorsed by the Second Circuit in *Squibb*, AH appropriately bears the burden of establishing the existence of a double recovery. *See also Hallas v. Boehmke*

*and Dobosz, Inc.*, 239 Conn. 658, 669–70, 686 A.2d 491 (1997) (defendant had burden of proving extent to which proceeds of second insurance policy had made plaintiff whole). Although the Court's previous ruling purported to place the burden on the defendant, Ruling at p. 6, in actuality the Court held shortfalls in the proof to the plaintiff's account, in that it faulted the plaintiff for failing to draft the settlement agreements in such a way that clearly allocated the settlement funds. The Court also concluded that "the history and circumstances of this case suggest that some amount of double recovery is likely," Ruling at p. 23, without finding that defendant had proved that such double recovery indeed had occurred. Reconsideration is appropriate in these circumstances to correct this error.

### 3. *Ruling on Reconsideration*

Another aspect of the decision in *Weyerhaeuser* that this Court finds useful is the schedule the trial court followed in addressing these issues. It is apparent that all CERCLA sites were tried, or judgment stipulated to, before the trial judge addressed the reduction issue. 15 P.3d at 121. By utilizing this strategy, the trial court had a final jury determination regarding coverage on all the sites at issue, such that the reduction issue could be decided in the overall context of coverage verdicts, prior settlements, and total costs, with no material factual disputes remaining. The court was thus not faced with the problem of separating out particular sites and devising a formula that would

---

1. The Court notes that the Second Circuit indicated agreement with this approach in its affirmance of *Squibb*, where the district court concluded that: "[c]onsiderations of public policy suggest that, if there is to be a windfall, it should be to Squibb and not the non-settling insurers. Public policy favors encouraging settlements of litigation." 1997 WL 251548 at \*2, *aff'd* 241 F.3d 154, 2001 WL 138332 at \*14 (observing that while Squibb may have gained from the settlements, "it undoubtedly took the risk that the size of the settlements would be inadequate to cover the settling insurers' pro rata share," and that the district court's approach "hardly seems unfair.").

isolate the portion of previous settlements attributable to that site. Nor was the court required to extrapolate a percentage of the total costs incurred to determine what portion of those costs would be covered under the insurance policies at issue, as this Court attempted to do in its previous Ruling. There was no need for the trial court to employ presumptions regarding allocation of damages previously recovered in settlement; instead, it had a full record and two jury findings setting out the "proven and covered damages" at all the tried and released sites. 15 P.3d at 122. Armed with this full information, it was able to make a reasoned assessment of whether Weyerhaeuser had been made whole for its losses, or whether duplicative recovery had in fact occurred.

■ No such clarity could have been presented to this Court at this stage after trial on only two sites. Despite disputes regarding the adequacy of discovery, the scope of the claims released, and whether any double recovery had in fact been shown, the Court nonetheless sought to sort out the competing claims and formulate a standard approximating "rough justice" on this issue. On reconsideration, the Court concludes that it was error to do so, in light of the many areas that remain to be explored and its conclusion that AH properly bears the burden of establishing double recovery. Rather, the Court will adopt the approach followed in *Weyerhaeuser* at the trial level, with some modifications appropriate to this case. The previous reduction in the verdict will be vacated, and the issue will be re-visited after the trial on all remaining sites is completed. Defendant will bear the bur-

den of persuading the Court that a double recovery resulted from the prior settlements; as this is an equitable matter, however, UTC will not be entitled to a jury trial on whether such double recovery has been proved.[2] Discovery will have been completed, and the Court will entertain defendant's submission and plaintiff's response on the issue of the existence of "double recovery" resulting from receipt of prior settlement proceeds by UTC. AH's claim that the formula used by UTC to calculate its government contract reimbursement rate somehow bears on the allocation of the settlement funds in this case may be advanced at that time.

This case differs from *Weyerhaeuser* and *Squibb* in significant ways, of course, in that the insurers for whose payments AH now seeks a reduction were never parties to the instant lawsuit and the AH policy at issue in this suit covered UTC for a different risk than the policies of the insurers who settled the Massachusetts action. This is thus not a matter of sorting out the allocation of damages between primary and excess carriers, as was the case in *Squibb*, nor does it involve a number of different policies, all of which were presumably "on the risk" for some period of time, as in *Weyerhaeuser*. Existence of a "double recovery" where different insured risks are at issue remains an open question. The Court concludes that reserving decision on defendant's motion to reduce the jury verdict until the trial on all sites has been concluded will enable the Court to arrive at a mode of analysis based on a global determination of coverage and sup-

---

2. Although UTC insists it is entitled to a jury trial on "all issues related to its claims," Pl. Mem. at 16, none of the cases it cites involved a post-trial verdict reduction based on previous settlements. In every case reviewed by this Court, the question of an offset was considered by the court post-trial. *See, e.g., Kop-* *pers Co. v. Aetna Cas. and Surety Co.,* 98 F.3d 1440 (3rd Cir.1996); *E.R. Squibb & Sons, Inc. v. Accident and Cas. Ins. Co.,* 1997 WL 251548 (S.D.N.Y. May 13, 1997); *Insurance Co. of North America v. Kayser–Roth Corp.,* No. C.A. PC 92–5248, 1999 WL 813661 (R.I.Super. July 29, 1999); *Weyerhaeuser,* 15 P.3d at 116.

ported by such evidentiary record as can be established, i.e., "refined" justice.

### Conclusion

Accordingly, plaintiff's Motion for Reconsideration (Doc. # 1231) is GRANTED. Upon reconsideration, the Court VACATES its previous Ruling granting defendant's Motion for a Reduction in the Windsor Locks Verdict (Doc. # 1229, Ruling dated Aug. 23, 2000). AH's motion for a reduction (Docs. ## 1013, 1020) is DENIED as premature. Defendant's Motion for Clarification or Reconsideration (Doc. # 1233) is DENIED as moot.

IT IS SO ORDERED.