Angelina IMBROGNO;  Orlando Imbrogno, Plaintiffs–Appellants,

Stamford Hospital, Plaintiff,

v.

Allen C. CHAMBERLIN, Defendant,

Saint Joseph Hospital Corporation, Defendant–Appellee.

No. 1475, Docket 95–9101.

United States Court of Appeals, Second Circuit.

Argued May 10, 1996.

Decided July 12, 1996.

88

Philip M. French, Stamford, Connecticut, for Plaintiffs-Appellants.

Paul E. Pollock, Bridgeport, Connecticut (Bai, Pollock & Dunnigan, P.C., Bridgeport, Connecticut, of counsel), for Defendant–Appellee.

Before: CARDAMONE, ALTIMARI, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge:

■ Obviously considering the jury's verdict unduly generous, a trial judge cast a line into the sea of law hoping to snag a legal doctrine that would justify reducing it. Regrettably, the district court hooked into the doctrines of "set off" or "set off/remittitur," neither of which provides authority for its action in decreasing that verdict by the amount of a pre-trial settlement with another defendant. A trial judge does not sit and vote as a juror; his or her personal reaction to a jury's verdict is not a substitute for legal authority to alter that body's decision. The trial court's catch must therefore be returned, that is, the case must be remanded.

## BACKGROUND

The appeal in this diversity case arises from a malpractice action brought by plaintiffs, residents of Florida, against defendant, a Connecticut hospital. Nearly 17 years ago, in September 1979 Angelina Imbrogno sustained a minor injury to her left arm. Several months later, despite test results indicating no continuing injury, she continued to experience pain. Her condition was initially diagnosed as "conversion hysteria," a psychiatric disorder. However, one physician, Dr. Allen Chamberlin, recommended what proved to be an overly aggressive course of treatment, performing several surgical procedures on Mrs. Imbrogno, including a decompression on her left forearm, a finger tendon transfer, and a fusion of her cervical vertebrae, all of which procedures made her pain worse. Even today her physical condition remains poor: her neck does not turn; her left arm is immobile; she walks with a limp; and she faints frequently.

In February 1984 the Imbrognos (plaintiffs or appellants) filed the instant action in the United States District Court for the District of Connecticut. Angelina Imbrogno sued the defendant Dr. Chamberlin for malpractice and the defendant-appellee Saint Joseph Hospital Corporation (hospital), where much of her treatment occurred, for negligently failing to supervise and control Dr. Chamberlin, who at the time had hospital privileges. Orlando Imbrogno sued both defendants for loss of consortium. On the eve of trial, plaintiffs settled with Dr. Chamberlin for $300,000. The action proceeded to a jury trial against the hospital in July 1995 before United States District Judge Gerard L. Goettel, sitting by designation.

The jury heard evidence that showed Dr. Chamberlin treated Mrs. Imbrogno from May 28, 1980 until early 1983, but the hospital was only involved in her care from November 17, 1980 until March 7, 1982 (the date of the cervical fusion). In other words, while nearly all of plaintiff's injuries could be traced to Dr. Chamberlin's conduct, only a portion of them were caused by the hospital's negligence. The district court did not instruct the jury on the doctrine of comparative fault, but instead gave the following damages instruction

> You should award damages only [for] those injuries which you find that the plaintiffs have proven by a preponderance of the evidence. Moreover, you should award

damages only for those injuries which you find the [p]laintiff has proven by a fair preponderance of the evidence were proximately caused by the defendant's negligence.

The jury found the hospital negligent and returned a verdict in favor of both plaintiffs for $983,500.

After the jury had returned its verdict, the hospital moved for a remittitur pursuant to Conn. Gen. Stat. Ann. § 52–216a (West 1991), seeking to reduce the verdict by the amount of the plaintiffs' settlement with Dr. Chamberlin. The district court initially "[did] not see the situation as being a remittitur," and, instead, considered Conn. Gen. Stat. Ann. § 52–572h(n) (West 1991) (concerning prior settlements and apportioning comparative fault) relevant. It explained that because the jury was not given a comparative fault charge, there was no basis for determining what damages Dr. Chamberlin might have caused in addition to those found by the jury to be the fault of the hospital. But it concluded that "it is nevertheless obvious that a set off must occur," and granted a setoff of $300,000 (the amount of the settlement with Dr. Chamberlin), reducing the jury's $983,500 verdict to $683,500.

Plaintiffs then moved for reconsideration of the decision to reduce the verdict, as a result of which the trial court issued a second order and explained that it "did not decide the earlier proceeding under [Conn. Gen. Stat. Ann.] § 52–572h(n)." It went on to state that a "set off/remittitur" was still appropriate, particularly because the case involved both active and passive tortfeasors and the active tortfeasor bought his peace before trial. The trial judge believed the jury's verdict was a very adequate award for plaintiffs' entire damages for medical malpractice and that a reduction was therefore justified in light of the prior $300,000 settlement with the doctor.

As a separate matter, the district court granted the plaintiffs' motion for special prejudgment interest under Conn. Gen. Stat. Ann. § 52–192a(b) (West 1991). This statute states that when a defendant refuses to accept a plaintiff's offer to settle that is lower than or equal to the eventual jury verdict, the defendant must pay 12 percent prejudgment interest from the date of the offer. Because the damages awarded to the plaintiffs exceeded their February 8, 1989 settlement offer of $500,000, the district court awarded prejudgment interest on the $683,500 they recovered. Plaintiffs also insisted that the $300,000 settlement with Dr. Chamberlin necessarily included interest and should lead to a reduced amount of setoff. The district judge rejected this contention.

Plaintiffs appeal from the judgment that reduced their jury verdict. We reverse.

## DISCUSSION

Because this is a diversity action we apply the substantive law of Connecticut, *see Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), and review *de novo* the district court's determination of what Connecticut law provides, *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991). Plaintiffs maintain the jury verdict was not excessive and should not have been reduced; moreover, they contend that a setoff was inappropriate.

Since the district court ordered a "set off" and then a "remittitur/set off," we must ascertain the legal significance of a setoff under Connecticut law and determine whether it was used appropriately. Under Connecticut law a setoff may be employed only when a defendant, against whom a tort judgment has been rendered, requests that the court set off that judgment against a debt owed to the defendant by the plaintiff. *See Connecticut Bank and Trust Co. v. Winters*, 225 Conn. 146, 622 A.2d 536, 541 (1993) (interpreting Conn. Gen. Stat. Ann. § 52–141 (West 1991), entitled "Set-off in action for trespass or tort"). In such a case, the defendant must affirmatively spell out and adequately allege its right of setoff in its responsive pleadings. *See Elis v. Rogers*, 15 Conn. App. 362, 544 A.2d 663, 665 (1988).

As the hospital made no such claim against the plaintiffs, the setoff doctrine has no application to the case at hand. The hospital nonetheless urges that to say it was

improper for the trial judge to grant a setoff is an exercise in semantics because it could have reached the same result by relying on the doctrine of remittitur. It asserts that we may affirm on any ground supported by the record, even one upon which the district court did not rely. We do not think it an exercise in semantics to find error in a trial court's exercise of its discretion in an unbridled manner to reduce a jury verdict it thinks is magnanimous, and to compel that trial court to examine the case in light of the relevant state law and to reach a principled conclusion, after such analysis, as a matter of state law, and then to give plaintiffs an option either to accept the court's legal decision or to have a new trial.

■ Although the "setoff" or "remittitur/setoff" path taken here was inappropriate, the district court may consider the settlement with Dr. Chamberlin and the jury verdict's alleged excessiveness in a motion under Fed. R. Civ. P. 59 for remittitur or a new trial. We recently observed that in deciding remittitur motions in diversity cases, federal courts apply federal procedural standards and state substantive law. *See Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1012 (2d Cir.1995), *cert. granted, vacated and remanded,* —— U.S. ——, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996) (remanding for reconsideration in light of *Gasperini*, which substantially agreed with *Consorti* ); *Gasperini v. Center For Humanities, Inc.,* —— U.S. ——, ——, 116 S.Ct. 2211, 2216, 135 L.Ed.2d 659 (1996) (citing *Consorti* with approval and noting that district court should apply state substantive law with appellate review only for abuse of discretion); *see also* 11 Charles A. Wright et al., Federal Practice and Procedure § 2802, at 42 (2d ed. 1995) (describing decision on a motion for a new trial as "a matter of procedure governed by [the federal] rules and not by state law or practice"); *cf. Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 278, 109 S.Ct. 2909, 2921–22, 106 L.Ed.2d 219 (1989) (approving of federal court's decision applying state-law standard of excessiveness of punitive damages award).

■ Thus, the trial court should have construed the hospital's motion to reduce the verdict as one made pursuant to Fed.R.Civ.P. 59 and looked to Connecticut substantive law to determine whether the jury award was excessive in light of the plaintiffs' settlement with Dr. Chamberlin. Under Connecticut law, a court may grant remittitur only when the jury verdict is excessive as a "matter of law." *Peck v. Jacquemin,* 196 Conn. 53, 491 A.2d 1043, 1052 (1985) (applying substantive rule laid out in Conn. Gen. Stat. Ann. § 52–216a (West 1991)); *see also Mauro v. Yale–New Haven Hosp.,* 31 Conn.App. 584, 627 A.2d 443, 446 (1993) (interpreting *Peck* to allow reduction of the jury verdict by amounts received by a plaintiff in settlement only when those amounts plus the verdict would allow damages that are excessive as a matter of law).

As the jury was instructed not to apportion fault between Dr. Chamberlin and the hospital, but, rather, to "award damages only for those injuries which [it] f[ou]nd the [p]laintiff has proven by a fair preponderance of the evidence were proximately caused by the defendant's negligence," a comparative fault inquiry is inapposite. The jury clearly found that the hospital caused the plaintiffs $983,500 in damages. On remand, the district court should follow Connecticut law and determine if the jury verdict, when added to the settlement, was excessive as a matter of state law. *See Gasperini,* —— U.S. at ——, 116 S.Ct. at 2224–25 (remanding case to district court to apply state law correctly when conducting excessiveness review); *Consorti,* 72 F.3d at 1012 (explaining that a federal court should act "[l]ike a [state] court"); *Martell v. Boardwalk Enters.,* 748 F.2d 740, 750 (2d Cir.1984) ("[W]e look, as a court sitting in diversity, to other jury awards condoned by the courts of the state whose substantive law governs the rights of the parties.").

If the district court concludes, after examining and comparing similar jury awards in Connecticut, that the verdict in the instant case is excessive as a matter of Connecticut law, it should order a new trial on the issue of damages, unless the plaintiffs agree to remit that portion of the jury verdict deemed excessive. *See Martell,* 748 F.2d at 755; *see also Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir.1984) ("Remit-

titur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial.").

Finally, after the amount of damages owed by the hospital is determined, the district court should order the payment of special prejudgment interest in accord with Conn. Gen. Stat. Ann. § 52–192a, if that amount is greater than or equal to the plaintiffs' settlement offer.

## CONCLUSION

We reverse and remand for further proceedings not inconsistent with this opinion.