17-4023-cv (L)
*Mirlis v. Greer*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2018

(Argued: May 22, 2019          Decided: March 3, 2020)

Docket Nos. 17-4023-cv (L); 18-416-cv (Con); 18-507-cv (Con)

ELIYAHU MIRLIS,

*Plaintiff-Appellee*,

LAWRENCE DRESSLER,

*Interested Party-Appellee*,

*- against -*

DANIEL GREER, RABBI, YESHIVA OF NEW HAVEN, INC.,

*Defendants-Appellants*,

AVIAD HACK,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Before:

CHIN and CARNEY, *Circuit Judges*, and SANNES, *District Judge*.[*]

---

[*] Judge Brenda K. Sannes, of the United States District Court for the Northern District of New York, sitting by designation.

Appeal from a final judgment of the United States District Court for the District of Connecticut (Shea, *J.*), following a jury trial, awarding plaintiff-appellee $21,749,041.10 in compensatory damages, punitive damages, and interest against his former high school and its chief administrator. Plaintiff-appellee alleged that the administrator sexually abused him for several years when he was a student at the high school. Defendants-appellees appeal, asserting error in (1) the district court's jury instructions; (2) its rulings with respect to the administrator's invocation of his Fifth Amendment privilege against self-incrimination; (3) its denial of a new trial or remittitur on the basis that the jury's award of $15 million in compensatory damages was excessive; and (4) its denial of a motion for relief from judgment based on newly discovered evidence.

AFFIRMED.

ANTONIO PONVERT III, Koskoff Koskoff & Bieder, P.C., Bridgeport, Connecticut, *for Plaintiff-Appellee*.

LAWRENCE DRESSLER, *pro se*, New Haven, Connecticut, *for Interested Party-Appellee*.

DAVID T. GRUDBERG, Carmody Torrance Sandak &
Hennessey LLP, New Haven, Connecticut, *for
Defendants-Appellants*.

Steven J. Errante, Lynch, Traub, Keefe & Errante P.C.,
New Haven, Connecticut, *for Appellant*.

CHIN, *Circuit Judge*:

In this diversity case, plaintiff-appellee Eliyahu Mirlis sued defendants-appellees Daniel Greer and Yeshiva of New Haven, Inc. ("Yeshiva"), a high school, alleging that Greer, a rabbi and the former chief administrator of Yeshiva, sexually abused him for several years while he was a student at the high school. At the conclusion of trial, the jury awarded Mirlis $15 million in compensatory damages, and thereafter the district court awarded $5 million in punitive damages and interest of $1,749,041.10, for a total award of $21,749,041.10.

Greer and Yeshiva appeal, principally on four grounds: (1) the district court erred in charging the jury on Greer's invocation of his Fifth Amendment privilege against self-incrimination; (2) the district court abused its discretion in its handling of Greer's invocation of his Fifth Amendment rights; (3) the district court erred in refusing to order a new trial or remittitur in light of the

size of the jury's award of compensatory damages; and (4) the district court erred in denying defendants' motion for relief from judgment based on newly discovered evidence. We affirm.[1]

## BACKGROUND

### I. The Facts

On appeal following a jury verdict, "we view the facts of the case in the light most favorable to the prevailing party." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 195 (2d Cir. 2004) (citing *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 253 (2d Cir. 1991)).

Greer is a rabbi and has been, at various times, the dean, director, treasurer, and president of the board of directors of Yeshiva, an orthodox Jewish high school in New Haven, Connecticut. Mirlis was a student at Yeshiva from Fall 2001 until Spring 2005. During that time, when Mirlis was fourteen to seventeen years old, Greer sexually abused him on a frequent, at certain points weekly, basis, sometimes for hours at a time. Mirlis recalled, *inter alia*, that Greer supplied him with alcohol and that he and Greer engaged in kissing, oral and

---

[1] On January 26, 2018, at the request of interested party-appellee Lawrence Dressler, the district court ordered the public release of portions of a video deposition of appellant Aviad Hack, a witness in the case. Hack's appeal of that decision is addressed in a separate opinion, also filed today.

anal sex, and mutual masturbation, at several locations in New Haven, including

Yeshiva, motels, and Greer's home, as well as in Philadelphia.

Mirlis suffered physical, emotional, and psychological injuries as a

result of Greer's sexual abuse. The lasting effect of that abuse was corroborated

by his wife and his clinical psychologist. For example, Mirlis and his wife

frequently argued over his continuing relationship with Greer during their

marriage, and she believed he was emotionally detached and unable to trust or

form relationships with others. Mirlis's psychologist, a specialist in post-

traumatic stress disorder ("PTSD") and childhood trauma related to physical,

emotional, and sexual abuse, conducted a forensic interview of Mirlis. He

concluded that Mirlis was shut off emotionally, had lost his sense of trust, had

difficulty with intimacy and vulnerability, continued to suffer from PTSD, and

would continue to struggle with PTSD throughout his lifetime.

## II.    *The District Court Proceedings*

### A.    *Pre-Trial*

On May 3, 2016, Mirlis commenced this action alleging that Greer

had sexually abused him and that Yeshiva's administrators had knowledge of the

abuse but failed to report Greer to law enforcement as required by Connecticut

law.  In his third amended complaint, filed May 8, 2017, Mirlis asserted causes of action for negligence and negligent infliction of emotional distress against Yeshiva; recklessness and intentional infliction of emotional distress against Greer and Yeshiva; and sexual assault and battery against Greer.

Prior to trial, Greer moved for an order precluding Mirlis from calling him as a witness because he planned to invoke his Fifth Amendment privilege, on the grounds that the claims of sexual abuse and misconduct could give rise to criminal charges against him.  At a pretrial conference on May 2, 2017, the district court denied the motion, without prejudice, to Greer's right

> to object to specific questions where the invocation of the Fifth Amendment before the jury becomes cumulative, wastes time, or the probative value of [the evidence] is substantially outweighed by the danger of unfair prejudice.

App'x at 65; *see also* D. Ct. Dkt. No. 130 (minute order).

In addition, Greer and Yeshiva requested that the district court instruct the jury that the privilege "may have been asserted [by Greer] for a variety of reasons, including reasons unrelated to [his] guilt or innocence of any matters related to this case," and that the jury could choose to "totally disregard the evidence of the assertion of the Fifth Amendment by Mr. Greer."  App'x at 54.  His request was denied.

- 6 -

**B.** *Trial*

At trial, at the start of his direct examination and in response to questions from Mirlis's counsel, Greer acknowledged that at his deposition he had refused to testify about allegations that he sexually abused Mirlis at Yeshiva or was responsible for "covering up and allowing sexual abuse at the school" because he believed the answers could incriminate him. D. Ct. Doc. No. 230 at 40-41. Greer also indicated that he would invoke the privilege throughout trial. Soon thereafter, Greer agreed that he had invoked the privilege at his deposition when he was asked whether he had produced "documents that pertain to Rabbi Greer's sexual relationship with Eli Mirlis and any underage children." *Id.* at 43-44. He then invoked the privilege when asked whether he was "denying that [he] assaulted Eli Mirlis when [Mirlis] was a child." *Id.* at 46.

At that point, the district issued the following jury instruction:

A witness has a right under the Fifth Amendment to the Constitution to decline to answer questions on the ground that doing so may tend to incriminate him. However, you may, but are not required to, infer from such a refusal that the answer would have been adverse to the witness' interest and the interest of any parties in the case who are closely associated with the witness. You should consider any inference you may or may not choose to draw from a refusal to testify on Fifth Amendment grounds together with all other evidence

in the case. The law requires the witness, if he's going to invoke his rights under the Fifth Amendment, to do so with regard to specific questions. And, therefore, it may be necessary for [counsel] to ask a series of questions, and it may be necessary for the witness, if he chooses to do so, to invoke his rights with regard to each question.

*Id.* at 47.

The direct examination continued, and Greer answered many questions about a variety of topics. But when he was asked questions about whether he engaged in sexual misconduct with Mirlis while Mirlis was a minor student at Yeshiva or related questions, Greer repeatedly invoked the privilege on the advice of counsel.[2] Meanwhile, Greer's counsel requested a standing objection to the line of questioning. The district court, however, ruled that the

---

[2]     Greer invoked the privilege when asked whether he: (1) "sexually abused and assaulted other minor boys, including a man named Aviad Hack," D. Ct. Doc. No. 230 at 48; (2) taught religious and secular studies at Yeshiva, *id.* at 51-52; (3) taught Mirlis, *id.* at 57; (4) taught communal service, ethics, theology, and Jewish history, *id.* at 58; (5) "force[d] . . . Mirlis to have sex with [him] when he was a child" at various New Haven addresses, *id.* at 95; (6) "molested [Mirlis] in [Greer's] bedroom," *id.* at 95; (7) had "sex with [Mirlis] at a motel in Branford," *id.* at 96; (8) "force[d] [Mirlis] to have sex with [him] at a motel in Paoli," *id.* at 96; (9) "force[d] [Mirlis] to have sex with [him] when [Mirlis] was a child at a hotel in Philadelphia," *id.* at 96-97; (10) had "sex with [Mirlis] when he was a child at the land in Hamden," *id.* at 97; and (11) "got . . . Mirlis when he was a child to become involved sexually with [Greer] by showing him pornography," *id.* at 98. Greer did not invoke the privilege and essentially denied the allegation when asked whether he had sex with Mirlis "[o]n a blanket out in the woods on some land in Hamden." *Id.* at 97.

objections had to follow each question. The district court thereafter overruled several additional objections from Greer's counsel, but it eventually sustained the objections as it determined that the questions had become "cumulative." *Id.* at 98. Subsequently, Mirlis's counsel referred to Greer's invocation of the privilege on cross-examination and during summation.

In addition to Greer's testimony, Mirlis presented other extensive evidence of Greer's sexual abuse of him and the impact it had on him, including his own testimony as well as the testimony of his wife, his psychologist, and Aviad Hack (a former assistant principal at Yeshiva who testified via deposition that he was aware of but did not report Greer's abuse of Mirlis and that he also had a sexual relationship with Greer that began when he was a student).

At the close of the evidence, during its charge to the jury, the district court instructed the jury with respect to the Fifth Amendment as follows:

> A witness has a right under the Fifth Amendment to the Constitution to decline to answer questions on the ground that doing so may tend to incriminate him. However, you may, but are not required to, infer from such refusal that the answer would have been adverse to the witness's interest and the interest of any parties in the case who are closely associated with the witness. You should consider any inference you may or may not choose to draw from a refusal to testify on Fifth

Amendment grounds together with all the other evidence in the case.

D. Ct. Dkt. No. 233 at 450-51.

The jury reached a verdict in favor of Mirlis on each claim and awarded Mirlis compensatory damages of $15 million. It also found that "punitive damages should be assessed against" both Greer and Yeshiva. D. Ct. Dkt. No. 157.

### C.  *Post-Trial*

On June 6, 2017, the district court entered judgment, awarding, in addition to the jury's award of $15 million in compensatory damages, $5 million in punitive damages (calculated in accordance with Connecticut common law as the amount of attorneys' fees, representing one-third of the jury's award)[3] as well as $1,749,041.10 in offer-of-compromise interest (in accordance with Conn. Gen. Stat. § 52-192a), for a total award of $21,749,041.10 in favor of Mirlis against Greer and Yeshiva.

Pursuant to Federal Rule of Civil Procedure 59(a), Greer and Yeshiva filed a motion for new trial, or in the alternative, for remittitur on June

---

[3]  *See, e.g.*, *Berry v. Loiseau*, 614 A.2d 414, 435 (Conn. 1992) (punitive damages limited to expense of litigation, including attorneys' fees, less taxable costs); *Waterbury Petroleum Prods., Inc. v. Canaan Oil & Fuel Co.*, 477 A.2d 988, 1004 (Conn. 1984) (same).

28, 2017. They argued that the "evidence presented at trial simply cannot support the jury's exorbitant verdict in this case, which is dramatically out of step with non-economic damage awards by juries in cases involving similar claims of sexual abuse, both in Connecticut and throughout the country." D. Ct. Doc. No. 172 at Attachment #1. Later, on October 27, 2017, Greer and Yeshiva filed a motion for relief from final judgment, pursuant to Rule 60(b)(2), arguing that new evidence in the form of testimony from a former teacher at Yeshiva would undermine the credibility of Mirlis and Hack and would likely have led to a different verdict had it been presented at trial. On December 8, 2017, ruling from the bench, the district court denied both motions.

This appeal followed.[4]

## *DISCUSSION*

Greer and Yeshiva challenge (1) the district court's instructions to the jury on the invocation of the privilege; (2) the district court's handling of Greer's invocation of the privilege; (3) the denial of their motion for a new trial or remittitur based on the purported excessiveness of the jury's compensatory

---

[4]    In 2019, Greer was convicted on four counts of risk of injury to a minor in violation of Connecticut law, and he was sentenced to 20 years' imprisonment, to be suspended after he serves 12 years. *See* Docket, *State v. Greer*, NNH-CR17-0177934-T. Greer has appealed that decision.

damages award; and (4) the denial of their motion for relief from judgment based on newly discovered evidence. We discuss each issue in turn.

## I.    *Jury Instruction on Fifth Amendment Privilege*

Greer and Yeshiva acknowledge that the district court's jury instruction set forth the "correct statement of law -- at least in part." Defs.-Apps. Br. at 15. They argue, however, that more extensive instructions were warranted given the "controversial and emotional nature" of the allegations of sexual abuse of a minor in this case. *Id.* In particular, they contend that the district court should have included language to the effect that the privilege "may have been asserted [by Greer] for a variety of reasons, including reasons unrelated to [his] guilt or innocence of any matters related to this case." App'x at 54; *see* Defs.-Apps. Br. at 15-17. We are not persuaded.

### A.    *Applicable Law*

We review a district court's instructions to the jury *de novo*. *Uzoukwu v. City of New York*, 805 F.3d 409, 414 (2d Cir. 2015). "Jury instructions are erroneous if they mislead the jury or do not adequately inform the jury of the law." *Id.* For a verdict to be set aside based on an erroneous jury charge, the appellant must show that the "error was prejudicial in light of the charge as a

whole."  *E.g., Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014)

(internal quotation marks omitted).

In *Brink's Inc. v. City of New York*, we upheld the admission of

evidence of witnesses' invocations of the privilege where the district court

instructed the jury that a "witness ha[s] a constitutional right to decline to answer

on the ground that it may tend to incriminate him [and] you may, but need not,

infer by such refusal that the answers would have been adverse to the witness'

interest."  717 F.2d 700, 707 (2d Cir. 1983) (alterations in original) (internal

quotation marks omitted); *see also F.D.I.C. v. Fid. & Deposit Co. of Md.*, 45 F.3d 969,

979 n.5 (5th Cir. 1995) (holding jury instruction was proper where district court

stated "[a] witness has a constitutional right to decline to answer on the grounds

that it might tend to incriminate him" and jury "may draw an inference for or

against a party"); Leonard B. Sand *et al.*, 4 *Modern Federal Jury Instructions: Civil*,

Instruction 75-5 (2019) ("[I]n civil cases, you are permitted, but not required, to

draw the inference that withheld information would have been unfavorable to

the defendant.").

We have addressed whether a party-witness suffers prejudice from a

court's adverse inference instruction regarding the privilege.  In *Woods v. START*

- 13 -

*Treatment & Recovery Centers, Inc.*, we held that the party suffered "acute prejudice" where the jury instructions included language permitting the jury to infer that, but for the assertion of the privilege, the party would have answered "yes" when asked whether she had been accused of unethical conduct. *See* 864 F.3d 158, 170-71 (2d Cir. 2017). In *Woods*, the district court's instruction effectively directed the jury to adopt the negative inference. Noting the questionable probative value of the adverse inferences there, we held that admission of the invocations and the instruction were improper.[5]

### B.    *Application*

We conclude that the district court's jury instruction here was neither erroneous nor unfairly prejudicial.

As to the claim of error, the district court advised the jurors that they "may, but are not required to, infer" from Greer's invocation of the privilege that his "answer would have been adverse to [his] interest." D. Ct. Doc. 153 at 15.

---

[5]    In *Woods*, the court instructed the jury that "you may infer that the plaintiff's answers at the deposition, if she had not refused to answer, would have been 'yes' to the questions asked." 864 F.3d at 170. Moreover, most of the disputed questions asked whether the plaintiff had been accused of something, and, as we noted, mere accusations have little, if any, probative value. *Id*. Other questions asked whether the plaintiff had ever been convicted of "any immoral or unethical conduct," and these questions risked the admission of evidence of prior convictions that did not meet the requirements of Federal Rule of Evidence 609(a)(2). *Id*. 170-71.

- 14 -

This instruction was an accurate statement of the law and was not materially different from the adverse inference instruction we approved in *Brink's*. And while Greer desired additional language to advise the jury of its ability to "totally disregard the evidence of the assertion of the Fifth Amendment by [] Greer," App'x at 54, there is no requirement that jury instructions be favorable to a party, *see Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 346 (2d Cir. 1994) ("While a more specific instruction might have been helpful, there is no basis for concluding that the jury was given a misleading or inaccurate impression of the law."); *see also Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1309 n.8 (11th Cir. 2014) ("[W]hen the instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." (internal quotation marks omitted)); *Fid. & Deposit Co. of Md.*, 45 F.3d at 979 (holding that district court did not err in "not cautioning the jury that the Fifth Amendment may be invoked by an innocent party"); *cf. United States v. Green*, 599 F.3d 360, 378 (4th Cir. 2010) (holding that even though "'a more specific instruction might have been desirable'" and the "proposed instruction may have more adequately presented his defense theory," a district court does

not abuse its discretion where defendant's proposed instructions were "clearly covered" by the district court's instruction (citation omitted)). Greer and Yeshiva do not cite any example of a case where the instruction they requested was actually given.

As to the claim of prejudice, the district court's instruction to the jury was not prejudicial. Unlike in *Woods*, where the instruction suggested that the jury should assume the negative inference, the instruction here did not invite prejudice against Greer by implying that Greer's silence should be construed as an outright admission. Accordingly, the district court's jury instruction was proper.

## II. *Invocation of the Privilege*

Greer does not dispute the relevance of questions concerning incidents of sexual abuse against Mirlis, but he argues that the series of questions that elicited his invocation of the privilege were cumulative and unduly prejudicial, and that the district court "erred in its decision not to prohibit, or reasonably limit, questioning about critical and potentially inflammatory allegations of sexual abuse." Defs.-Apps. Br. at 27-28. We hold that the district

- 16 -

court did not abuse its discretion in admitting the evidence of Greer's invocation of the privilege in the manner that it did.

### A. *Applicable Law*

"We review for abuse of discretion the district court's admission into evidence of a witness's invocation of the Fifth Amendment." *Woods*, 864 F.3d at 170 (citation omitted). To be admissible, a witness's invocation of the Fifth Amendment privilege against self-incrimination must satisfy Federal Rules of Evidence 401 and 403. *See LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997); *Brink's*, 717 F.2d at 710. Under Rule 401, evidence is relevant if it "makes a consequential fact more or less probable." *In re 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 171 (2d Cir. 2019) (citing Fed. R. Evid. 401). We have held that factfinders may draw "adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Woods*, 864 F.3d at 170 (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *see 650 Fifth Ave.*, 934 F.3d at 171; *Brink's*, 717 F.2d at 707 ("The privilege is merely an *option of refusal*, not a prohibition of inquiry and it is universally conceded that the question may be put to the *witness on the stand*. . . ." (internal quotation marks omitted)).

Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "While [the analysis under Rule 403] is case specific, the mere fact that a Fifth Amendment invocation is 'damning' to a party's position does not preclude its introduction," but "invocations that cross the line to 'inflammatory' are more likely to fail under Rule 403." *650 Fifth Ave.*, 934 F.3d at 171 (quoting *Brink's*, 717 F.3d at 710).

As a function of its discretion under Rule 403, a district court controls the form in which evidence of the privilege invocation reaches the jury. *Id.* at 171-72 (distinguishing between content and form with respect to admission of evidence that the witnesses invoked the privilege); *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986). And the dramatization of a party's presentation of evidence may "tip[] the Rule 403 scale from 'damning' to 'inflammatory.'" *650 Fifth Ave.*, 934 F.3d at 172 (quoting *Brink's*, 717 F.2d at 710).

The dissent in *Brink's* foreshadowed the issue of factfinders being induced to draw prejudicial adverse inferences from a witness's privilege invocation by counsel's "sharp" practice of conducting a "systematic interrogation of witnesses on direct examination . . . know[ing] they will assert the privilege

against self-incrimination." 717 F.2d at 715 (Winter, *J.*, dissenting). One principal concern was that a party would ask fact-specific, leading questions "designed to suggest to the jury that but for the privilege the answer in each case would have been 'yes'" and "inevitably invite[] jurors to give evidentiary weight to questions rather than answers." *Id.* at 716. The dissent was also concerned that the strategy would "effectively den[y] the right of cross-examination since the witness cannot even be made to explain why the privilege has been invoked, much less to contradict the intended inference." *Id.* On the other hand, it was precisely these kinds of questions -- fact-specific, leading questions -- that the majority in *Brink's* held were permissible. *Id.* at 715-16 (dissent quoting questions).

We revisited the issue surrounding dramatization of a witness's privilege invocation in *650 Fifth Avenue.* There, the district court permitted the Government to present the jury with videotapes of witnesses, who did not testify at trial, "declining to answer question after question during their depositions." *650 Fifth Ave.*, 934 F.3d at 172. We held that the "parad[ing] of videotapes, which the Government strategically spread out across multiple days of trial, was substantially more prejudicial and redundant than probative" because "[t]he videotapes repeatedly reminded the jury of the witnesses' decisions not to

- 19 -

testify" and "repeatedly put the Government's incriminating questions in the jurors' minds -- questions the parties agreed were not evidence and that the court allowed the Government to submit as an exhibit." *Id.*

In evaluating the risk of unfair prejudice that may result from the manner in which a party introduces his evidence, we may compare the district court's course of action against evidentiary alternatives. *Id.* (reasoning that district court could have employed "[s]ubstantially less prejudicial and redundant alternatives" such as a stipulation or a more limited showing of videotape evidence of witnesses' invocation of the privilege); *accord* Fed. R. Evid. 403 advisory committee's note to the 1972 proposed rules ("availability of other means of proof may also be an appropriate factor" in deciding whether to exclude on grounds of unfair prejudice); *Old Chief v. United States*, 519 U.S. 172, 184 (1997) (holding that probative value of evidence "may be calculated by comparing evidentiary alternatives").

**B.**    *Application*

Because Greer and Yeshiva concede that his invocation of the privilege was relevant, we focus on whether the elicitation of that evidence at trial withstands scrutiny under Rule 403. It does. While the evidence of Greer's

invocation of the privilege against self-incrimination was surely "damning," it was not unfairly prejudicial, and the district court did not abuse its discretion in admitting the evidence in the manner that it did.

First, Greer's invocation of the privilege was highly probative. His refusal to answer such basic questions as whether he forced Mirlis to have sex with him when Mirlis was a child is telling. "Silence is often evidence of the most persuasive character." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923) (quoted with approval in *Baxter*, 425 U.S. at 319).

Second, there was substantial independent evidence to corroborate the inference. *See Baxter*, 425 U.S. at 318 ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("[A]n adverse inference can be drawn when *independent evidence* exists of the fact to which the party refuses to answer."). Of course, Mirlis testified in painful detail as to Greer's abuse of him; he was subjected to cross-examination, and the jury believed him. There was other evidence of Greer's abuse of Mirlis as well, including the assistant principal's testimony. Clearly, the jury did not base its decision "solely" on

- 21 -

Greer's refusal to testify.  *See Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1482 (8th Cir. 1987).

Third, the district court gave the jury limiting instructions during Greer's testimony and again at the end of the trial.  Indeed, after Greer had answered a few questions about whether he had invoked the privilege at his deposition and whether he intended to invoke the privilege at trial, he asserted the privilege only once before the district court intervened to give a limiting instruction.  After Greer invoked the privilege a few more times, the court reminded the jury "[s]ame instruction as before."  D. Ct. Doc. No. 230 at 95.  And soon thereafter, the district court sustained the objection on the grounds the questions had become cumulative.  Mirlis's counsel ceased asking questions about the sexual assaults.

Fourth, Greer asserted the privilege inconsistently.  He answered many questions, including questions inquiring as to whether he had sexually abused Mirlis when he was a student.  For instance, shortly after invoking the privilege, Greer denied that he had sexually abused Mirlis in the woods in Hamden.  Greer also invoked the privilege in response to questions with no apparent implication that Greer had engaged in criminal conduct, such as

- 22 -

whether he taught religious and secular studies.  As the district court observed, the jury was likely swayed by "Greer's selective invocation of his rights rather than by his assertion of the [privilege]."  D. Ct. Doc. No. 300 at 28.

In *650 Fifth Avenue*, where the Government presented a "parade of videotapes," "spread out across multiple days of trial," of witnesses at their depositions refusing to answer question after question, we concluded that "the district court's failure to moderate the Government's extreme tactic was an abuse of discretion." *650 Fifth Avenue*, 934 F.3d at 172.  Here, Mirlis's use of Greer's invocation of the privilege was not extreme, and the district court in fact moderated the presentation of the evidence.  Accordingly, we conclude that the district court did not abuse its discretion in permitting the evidence of Greer's invocation of the privilege in the circumstances here.

## III.    *Motion for New Trial or Remittitur*

Greer maintains that the district court erred in denying his motion pursuant to Rule 59 for a new trial or remittitur because there was insufficient proof of Mirlis's noneconomic damages and that the $15 million jury verdict was "shocking." Defs.-Apps. Br. at 32-48.  We are not persuaded, in light of similar awards by juries and courts in Connecticut.

**A.** *Applicable Law*

We review for abuse of discretion a motion under Federal Rule of Civil Procedure 59 for remittitur or new trial. *Munn v. Hotchkiss Sch.*, 795 F.3d 324, 335 (2d Cir. 2015); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 112 n.34 (2d Cir. 2013). "[I]n deciding remittitur motions in diversity cases, federal courts apply federal procedural standards and state substantive law." *Imbrogno v. Chamberlin*, 89 F.3d 87, 90 (2d Cir. 1996); *accord Munn*, 795 F.3d at 335.

"Under Connecticut law, a court may grant remittitur only when the jury verdict is excessive as a 'matter of law.'" *Imbrogno*, 89 F.3d at 90 (quoting *Peck v. Jacquemin*, 491 A.2d 1043, 1052 (Conn. 1985)). The size and scope of the jury's verdict must be supported by the record. *Munn*, 795 F.3d at 335-36.

> If the district court concludes, after examining and comparing similar jury awards in Connecticut, that the verdict in the instant case is excessive as a matter of Connecticut law, it should order a new trial on the issue of damages, unless the plaintiffs agree to remit that portion of the jury verdict deemed excessive.

*Imbrogno*, 89 F.3d at 90.

In considering a damages award, "a trial court must evaluate 'whether the jury's award falls somewhere within the necessarily uncertain limits

of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption.'" *Munn*, 795 F.3d at 335 (quoting *Birgel v. Heintz*, 301 A.2d 249, 252 (Conn. 1972) (alteration in original)). A jury award may not be set aside merely because it exceeds what the court would have awarded. *Saleh v. Ribeiro Trucking, LLC*, 32 A.3d 318, 323 (Conn. 2011) (citing *Campbell v. Gould*, 478 A.2d 596, 600 (Conn. 1984)).

There are only a few decisions in Connecticut addressing the size of a jury award in cases concerning sexual abuse of a minor, but they are instructive. For example, in *Iino v. Spalter*, the court denied a motion to set aside a $15 million jury verdict against a defendant based on claims that he sexually abused the plaintiff from the time she was six years old until she was seventeen. 192 Conn. App. Ct. 421, 477 (2019). In *Doe v. Boy Scouts of Am. Corp.*, 147 A.3d 104 (Conn. 2016), the Connecticut Supreme Court upheld an award of $7 million for three incidents of sexual assault against a minor victim. And in *Blair v. LaFrance*, the court awarded $75,200 for economic damages; $500,000 for noneconomic damages; and $167,800 in punitive damages based on claims that the defendant sexually molested the plaintiff several times before the plaintiff's sixteenth

birthday.  No. CV 980149622S, 2000 WL 1508232, at *5 (Conn. Super. Ct. Sept. 27, 2000).

B.  *Application*

The district court did not abuse its discretion in denying Greer's motion for a new trial or remittitur because the verdict is not excessive as a matter of Connecticut law.  While Greer argues that Mirlis lacked evidence to support the award of noneconomic damages, there was ample evidence in the record of Mirlis's physical, emotional, and psychological injuries.  In addition to Mirlis's own testimony, his wife and psychologist both testified that Mirlis had issues with intimacy, forming emotional attachments, and vulnerability with others.  Mirlis's wife explained that Greer's abuse had a significant, negative impact on their married life and that Greer's continued presence in Mirlis's life was a source of discord between her and Mirlis.  Mirlis's psychologist, an expert in PTSD and childhood trauma, indicated that even with treatment, the sexual abuse Mirlis suffered as a minor would have lifelong consequences for him.  The jury clearly credited the witnesses' testimony in finding Greer and Yeshiva liable and awarding compensatory damages of $15 million.

The amount of compensatory damages is undoubtedly high, but we are not persuaded that a new trial or remittitur is warranted under Connecticut law. The award here is not excessive when compared to the awards in the cases cited above. Here, the record indicates that Mirlis suffered repeated abuse for approximately three years, from the time he was fourteen until he was seventeen years old. At certain points, Mirlis was abused for hours at a time, on a weekly basis. The first time Greer abused Mirlis, he plied Mirlis with alcohol, pretended to care about Mirlis and his family, acknowledged Mirlis's parents' financial struggles, and then kissed him. Eventually the abuse included oral sex, anal sex, mutual masturbation, and watching pornography together -- while Mirlis was a sophomore, junior, and senior in high school and Greer was a 60-something year old man.

On a per incident basis, the $15 million verdict falls within the range of noneconomic damages that have been upheld by Connecticut courts in cases of sexual abuse. *See Boy Scouts*, 147 A.3d at 111, 128 (permitting a $7 million award for three incidents of sexual assault on a ten- or eleven-year old); *Doe v. Thames Valley Council for Cmty. Action, Inc.*, 797 A.2d 1146, 1151 n.1 (Conn. 2002) (upholding a total award of noneconomic damages of $220,000 to minors who

were sexually assaulted by their school bus driver); *Sciola v. Shernow*, 577 A.2d 1081, 1084 (Conn. 1990) (holding that trial court erred in ordering remittitur of $323,833.34 of a $400,000 jury verdict to plaintiff on claims that her dentist sexually assaulted her while she was sedated). Mirlis testified that Greer sexually abused him weekly during his sophomore year (when he was fourteen years old) and somewhat less often during his junior and senior years (but still at least every three or four weeks), and therefore he was sexually assaulted dozens of times.[6] Based on the evidence presented at trial, we are not persuaded that the jury's award "shocks the sense of justice." Consequently, we conclude that the district court did not abuse its discretion in denying the motion for a new trial or remittitur. Greer's challenge to the amount of the verdict fails.

## IV. *Motion for Relief from Final Judgment*

Finally, Greer contends that newly discovered evidence, a former Yeshiva teacher's recounting of Mirlis's interactions with Hack while the two

---

[6] In his appellate brief, Mirlis estimates that he was sexually assaulted ninety times over the course of three academic years. In denying the motion for a new trial, the district court noted that the $15 million award would amount to "roughly $300,000 per episode" using fifty as the number of incidents, which it concluded was "not out of line" with other cases. D. Ct. Doc. No. 300 at 32.

were at Yeshiva, would have changed the outcome of the trial by discrediting the testimony of Mirlis and Hack. This argument is without merit.

### A.    *Applicable Law*

This Court reviews a district court's ruling on a Rule 60(b) motion for abuse of discretion. *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999). "Rule 60(b) allows relief from a judgment or order when evidence has been newly discovered or for any other reason 'justifying relief from the operation of the judgment.'" *Id.* at 131-32 (quoting Fed. R. Civ. P. 60(b)(2), (6)). As we have explained,

> [T]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (internal quotation marks omitted); *accord State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004); *Westerly Elecs. Corp. v. Walter Kidde & Co.*, 367 F.2d 269, 270 (2d Cir. 1966) (per curiam) (citing *Kolan v. Csengeri*, 268 F.2d 239, 240 (2d Cir. 1959) (per curiam)).

**B.** *Application*

The motion for relief from final judgment relied on a witness who purportedly came forward only after learning of the verdict in the case, but the motion papers did not identify the witness by name and was supported only by affidavits from two attorneys and Greer. One of the lawyers reported that the individual claimed that Mirlis was his student when he taught at Yeshiva from 2002-2004 and that Mirlis engaged in "unusual behavior" and was a "frequent liar." App'x at 432. The lawyer also reported that the witness observed that Mirlis and Hack had a "very unusual" relationship that was "not a normal student/teacher relationship." *Id.*

The district court did not abuse its discretion in denying the motion. It concluded that even assuming Mirlis engaged in "bad behavior," "the jury could reasonably have viewed such behavior as evidence of the mental toll of Greer's abuse upon Mirlis." D. Ct. Doc. No. 300 at 53. We agree with this assessment. Moreover, as to the evidence that Mirlis was a frequent liar and that he and Hack had an unusual relationship, to the extent the evidence was admissible at all, it was merely impeachment evidence. Greer and Yeshiva cross-examined Mirlis at length at trial, and they had an opportunity to attack Hack's

credibility as well at his deposition. The district court did not err, much less abuse its discretion, in concluding that the proposed additional evidence from the unnamed teacher would not have changed the outcome of the case and did not warrant relief from judgment.

## *CONCLUSION*

For the reasons set forth above, we **AFFIRM** the judgment of the district court.