UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2019

(Argued: December 18, 2019     Decided: August 12, 2020)

Docket No. 18-3807-cv

───────────────────────────

METZLER INVESTMENT GMBH, CONSTRUCTION LABORERS PENSION TRUST OF
GREATER ST. LOUIS,
*Plaintiffs-Appellants*,

SUSIE ONG, Individually and On Behalf of All Others Similarly Situated,
*Plaintiff*,

v.

CHIPOTLE MEXICAN GRILL, INC., MONTGOMERY F. MORAN, JOHN R. HARTUNG, M.
STEVEN ELLS,
*Defendants-Appellees*.

───────────────────────────

Before:      POOLER, SACK, AND HALL, *Circuit Judges*.

The United States District Court for the Southern District of New York

(Katherine Polk Failla, *Judge*) granted the defendants-appellees' motion pursuant

to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice the

plaintiffs-appellants' second amended complaint which alleged violations of the

federal securities laws against the defendants-appellees, and entered judgment

for the defendants-appellees. The plaintiffs-appellants then brought a motion under Federal Rules of Civil Procedure 59(e) and 60(b) for relief from the judgment and for leave to file a third amended complaint. The district court denied the motion on the grounds that the plaintiffs-appellants were not entitled to relief under those rules and, in the alternative, that amendment would be futile. The plaintiffs-appellants appealed. We agree that the plaintiffs-appellants are not entitled to relief under Rules 59(e) and 60(b). The judgment of the district court is therefore

AFFIRMED.

DOUGLAS WILENS, Robbins Geller Rudman & Dowd LLP, Boca Raton, FL, *for Plaintiffs-Appellants*.

Samuel H. Rudman, David A. Rosenfeld, and Michael G. Capeci, *on the brief*, Robbins Geller Rudman & Dowd LLP, Melville, NY, *for Plaintiffs-Appellants*.

James M. Hughes, and Christopher F. Moriarty, *on the brief*, Motley Rice LLC, Mount Pleasant, SC, *for Plaintiffs-Appellants*.

William H. Narwold, and Mathew P. Jasinski, *on the brief*, Motley Rice LLC, Hartford, CT, *for Plaintiffs-Appellants*.

Louis M. Bogard, *on the brief*, Motley Rice LLC, Washington, DC, *for Plaintiffs-Appellants*.

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

ANDREW B. CLUBOK (Susan E. Engel, Matthew J. Peters, and Jessica L. Saba, *on the brief*), Latham & Watkins LLP, Washington, DC, *for Defendants-Appellees.*

Kendra N. Beckwith, *on the brief*, Messner Reeves LLP, Denver, CO, *for Defendants-Appellees.*

SACK, *Circuit Judge*:

This appeal concerns an amended class-action complaint filed by the plaintiffs-appellants, Metzler Asset Management GmbH and Construction Laborers Pension Trust of Greater St. Louis, in the United States District Court for the Southern District of New York alleging violations of the federal securities laws by the defendants-appellees, Chipotle Mexican Grill, Inc., M. Steven Ells, John R. Hartung, and Montgomery F. Moran. On the defendants-appellees' motion, the district court (Katherine Polk Failla, *Judge*) dismissed the amended complaint without prejudice for failure to state a claim.

The plaintiffs-appellants filed a second amended complaint and the defendants-appellees again moved to dismiss. In their opposition papers, the plaintiffs-appellants requested leave to file a third amended complaint if the court were to grant the defendants-appellees' motion. After the close of briefing, the court granted the defendants-appellees' motion to dismiss and denied the

plaintiffs-appellants' request for permission to file a third amended complaint on the grounds that they had failed to cure deficiencies by amendments previously allowed, amendment would prejudice the defendants, and amendment would be futile. Accordingly, the district court dismissed the second amended complaint with prejudice and entered judgment for the defendants-appellees.

The plaintiffs-appellants then moved under Federal Rules of Civil Procedure 59(e) and 60(b) for relief from the judgment and for leave to file a third amended complaint. The court denied the motion on the grounds that the plaintiffs-appellants were not entitled to relief under Rules 59(e) and 60(b) and, in the alternative, that amendment would be futile. The plaintiffs-appellants challenge this ruling on appeal. They argue that the district court analyzed their motion incorrectly under Rules 59(e) and 60(b) and erred in concluding that amendment would be futile. For the reasons set forth below, we conclude that the district court correctly analyzed the plaintiffs-appellants' motion under Rules 59(e) and 60(b) and acted well within its discretion in denying that motion. As a result, we do not reach the district court's alternative holding or the plaintiffs-appellants' challenges to it. We therefore affirm the judgment of the district court.

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

## BACKGROUND

### I. Factual Background

The following statement of facts is drawn from the allegations in the plaintiffs-appellants' proposed third amended complaint.

1. *The Parties*

The plaintiffs-appellants in this class action are Metzler Asset Management GmbH and Construction Laborers Pension Trust of Greater St. Louis ("Metzler" and the "Trust" respectively; together the "plaintiffs" or the "plaintiffs-appellants"). They purchased shares of Chipotle Mexican Grill, Inc. ("Chipotle") common stock between February 5, 2015 and February 2, 2016 (the "class period").

The defendants-appellees are Chipotle, M. Steven Ells ("Ells"), Montgomery F. Moran ("Moran"), and John R. Hartung ("Hartung"). Chipotle is a fast-food restaurant chain. It was founded by defendant Ells in 1993 and by December 31, 2015 had grown to operate over 1,900 restaurants.

During the class period, which originally ran from February 5, 2015, through February 2, 2016, before it was shortened to October 21, 2015, through February 2, 2016, defendants Ells and Moran served as co-chief executive officers

("co-CEOs") of Chipotle while defendant Hartung served as chief financial officer ("CFO"). Defendants Ells and Moran served also on Chipotle's board of directors (the "board") — Moran as a director and Ells as the chairman. On December 12, 2016, Moran resigned both of his positions at the board's request. Ells then served as the sole CEO until he resigned on November 29, 2017. He continued to serve as chairman of the board.

2. *Chipotle's Methods of Food Preparation*

Chipotle sells ready-to-eat food products that contain produce including tomatoes, lettuce, red onions, jalapeños, and cilantro. Up until late 2014, the company prepared its produce in centralized commissaries. For example, tomatoes would be sliced or diced in such a commissary before being shipped to individual restaurants.

During 2014 and 2015, FDA regulations required such centralized commissaries to provide two different types of testing to ensure food safety: raw material testing and end-product testing.

Raw material testing involves testing raw food items for pathogens upon their arrival at the commissary. If any products test positive, they would not be processed.

End-product — or batch — testing involves testing a sample of processed food at set time intervals, for example, every fifteen minutes. If a sample tests negative for pathogens, then the batch from which the sample came would be approved for shipment to the company's individual restaurants. If, however, a sample tests positive for pathogens, then the batch of processed food from which the sample came would be discarded. In addition, the Chipotle commissary would trace through its supply chain to try to identify the source of the contaminated batch and prevent the company's restaurants from using potentially contaminated produce.

In late 2014, Chipotle transitioned from preparing the produce for its ready-to-eat food products in centralized commissaries to preparing the produce in its individual restaurants. "[T]his switch meant that 1,900 individual Chipotle restaurants were asked overnight to do something they previously had no training or experience with doing — ensuring the same level of food safety standards and controls that are in place in established commissaries." Proposed Third Amended Complaint ("PTAC") ¶ 83. But, according to a former Chipotle employee and area manager, both before the transition and throughout the class period, the individual restaurants did not have a procedure in place to test

produce for pathogens. As a result, the "risks to Chipotle's operations," specifically that its food products would cause outbreaks of food-borne illness, "dramatically increased" after the transition. *Id.* ¶ 84.

Several additional factors contributed to the increased risk: (1) "the number of workers handling the produce without effective training in food safety," *id.* ¶ 86, (2) the increased "number of surfaces that the produce would come into contact with by virtue of being prepared in the restaurants," *id.*, and (3) the difficulty or impossibility of performing end-product testing at, and supply chain tracing from, individual restaurants, which, in the event of a food-borne illness outbreak, would preclude health regulators from identifying and "extinguish[ing] the source of . . . [the] outbreak with any reasonable degree of certainty," *id.* ¶ 95.

### 3. *The Outbreaks*

The plaintiffs allege that this increased risk of food-borne illness outbreaks following the transition was realized. Prior to the transition, from 2008 to December 2014, there were three outbreaks of food-borne illness from Chipotle food products. After the transition, from December 2014 through December 2015, there were fourteen outbreaks linked to Chipotle customers or locations:

8

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

five Salmonella outbreaks, six E. coli outbreaks, and three Norovirus outbreaks. These outbreaks occurred in various parts of the country, affecting at least 23 states and sickening a total of approximately 611 people.

The Center for Disease Control ("CDC"), the Food and Drug Administration ("FDA"), and state or local public health officials investigated at least seven of these outbreaks.[1]  The government entities requested "ingredient traceback information from Chipotle to identify the source of the outbreak[s]." PTAC ¶ 117.  Chipotle responded with "limited" or "incomplete" information, which hindered, delayed, or prevented public health officials from identifying conclusively specific ingredients or suppliers as the source of the outbreaks.  *Id.* ¶¶ 120, 122-23.

Public health officials were able to identify sources they suspected of causing several outbreaks.  They included contaminated produce items such as cilantro, red onions, jalapeños, tomatoes, and lettuce which caused six outbreaks, and sick employees reporting to work which caused three outbreaks.  They were unable to identify a source or suspected source for five of the outbreaks.

---

[1] According to the plaintiffs, Chipotle would have been made aware of several outbreaks because a state or local health agency's report "on the Chipotle restaurants involved in the outbreak" would have been forwarded to the company.  PTAC ¶ 133.

4. *Chipotle's Response*

Chipotle responded by announcing in September 2015 that it was "implementing a comprehensive whole chain traceability program" that would allow it to trace ingredients "across the supply chain (end to end)." PTAC ¶¶ 400-01. In November 2015, the company further announced that it had retained two food safety consulting firms to "assess and improve upon its . . . standards for food safety." *Id.* ¶ 261. Following this assessment, Chipotle issued a press release on December 4, 2015, stating that it would adopt the consultants' proposals in their entirety, establishing a new "enhanced food safety program." *Id.* ¶ 262.

According to Chipotle, the new food safety program would include "high-resolution testing of all fresh produce in which a series of DNA-based tests . . . ensure the quality and safety of ingredients before they are shipped to restaurants." *Id.* It also called for revised "internal training to ensure that all employees . . . understand the company's . . . standards for food safety and food handling." *Id.*

It soon became evident that the new program would also involve a switch back to processing food in centralized commissaries: At a consumer conference

10

on December 8, 2015, defendant Ells stated that the company had responded to an outbreak in the Pacific Northwest by implementing "system-wide" changes, including, for example, "dicing our tomatoes in a commissary, so that they could go through a sanitizing kill step and then [be] hermetically sealed in containers and delivered to the restaurants." PTAC ¶ 264. Ells announced that cilantro and romaine lettuce also would be "washed and tested" before being shipped to the individual restaurants. *Id.* The announcement — and others[2] — revealed management's conclusion that it was not possible to perform in restaurants the type of pathogen testing performed in centralized commissaries. *Id.* ¶¶ 264-266.

---

[2] At a conference on January 13, 2016, Ells stated that:

> For years . . . we were dicing our tomatoes in a central kitchen. It was only for the last couple years that we brought them back in-house to dice. But you are not able to do the high-resolution testing in the restaurant, so that's why back into the central kitchen.
>
> The other item that we think is important to do in the central kitchen is lettuce . . . . We'll shred it in the central kitchen and wash it; do this high resolution testing. Then dry it and package it and off to the restaurant it will go . . .

PTAC ¶ 266.

Four days later, Chipotle announced that, at the board's request, Moran was resigning as co-CEO and member of the board of directors effective in early 2017.

5. *The Effects on Chipotle's Financial Performance*

The outbreaks "had an adverse impact on [Chipotle's] financial and operating results" in the fourth quarter of 2015. PTAC ¶ 263. In its Form 10-K for the fiscal year ending December 31, 2015, filed on February 5, 2016, Chipotle stated that "significant publicity regarding a number of food-borne illness incidents associated with Chipotle restaurants . . . had a severe adverse impact on our sales and profitability." *Id.* ¶ 270. Comparable restaurant sales, defined as the "change in period-over-period sales for restaurants beginning in their 13th full calendar month of operation," declined 14.6 percent in the fourth quarter of 2015 and approximately 36 percent in January 2016. *Id.*

The company stated that it planned to "increase marketing and promotional spending considerably during the first half of 2016 . . . in an effort to attract customers back to our restaurants and reverse negative sales trends." *Id.* Chipotle's efforts, however, were unsuccessful. In its Form 10-K filed for the fiscal year ending December 31, 2016, the company reported $22.9 million in

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

earnings compared to $475.6 million in earnings for the fiscal year ending December 31, 2015 — a 95.2 percent decline.

## II.    Procedural History

1. *The Complaint*

On January 8, 2016, plaintiff Susie Ong, who is not a party to this appeal, filed this putative securities class action against Chipotle, Ells, Moran, and Hartung in the United States District Court for the Southern District of New York.  The complaint asserted causes of action under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder, on behalf of purchasers of Chipotle securities between February 4, 2015, and January 5, 2016. The complaint alleged that the defendants made materially false and misleading statements regarding the company's quality controls that artificially inflated Chipotle's stock price.  The putative class allegedly suffered damages when Chipotle's stock price dropped after a series of food-borne illness outbreaks from August to December 2015 were connected to Chipotle customers and restaurants.

On March 8, 2016, by-then putative class members Metzler and the Trust made a motion asking the court to appoint them as lead plaintiffs and to approve their counsel as lead counsel.  On April 18, 2016, the court granted the motion.

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

2. *The First Amended Complaint and Motion to Dismiss*

Two months later, on June 17, 2016, the plaintiffs filed an amended complaint that included more detailed and specific allegations than had the original complaint. Among other things, the amended complaint alleged that the defendants had violated federal securities laws based on Chipotle's failure to disclose its decision to switch "from using central commissary kitchens to process and prepare the produce used in its restaurants to processing produce in each of the Company's over 1,900 restaurants," and the increased risk of food-borne illness outbreaks that resulted from that decision. First Amended Complaint ¶ 4. That increased risk allegedly was realized when there were at least seven food-borne illness outbreaks from July to December 2015.

On August 18, 2016, the defendants moved to dismiss the amended complaint. On March 8, 2017, the court granted the motion. It concluded that the plaintiffs had failed to state a claim because, among other things, the facts alleged did not support the inference that any defendant was aware of any heightened risk associated with the move away from central commissary food preparation. The court determined that the allegations in fact supported the opposite inference:

14

> Plaintiffs allege that Chipotle transitioned to in-store produce production in "late 2014," and have pleaded facts indicating that the first outbreak of food-borne illness at a Chipotle restaurant occurred in July 2015, at least seven months later. For at least seven months, therefore, this transition appeared not to heighten Chipotle's risk at all.

Opinion and Order of the District Court issued Mar. 8, 2017. The court dismissed the amended complaint without prejudice and granted the plaintiffs' request for leave to amend their complaint.

3. *The Second Amended Complaint and Motion to Dismiss*

The plaintiffs filed a second amended complaint (the "SAC") on April 7, 2017. It included new allegations of six additional outbreaks, including several in late 2014 and early 2015, presumably to rebut the district court's conclusion that the transition "appeared not to heighten Chipotle's risk at all" for the first half of 2015. *Id.* The defendants again moved to dismiss. The plaintiffs, in their opposition papers, included a request for leave to replead if the Court were to grant any part of the defendants' motion.

After briefing on the motion was complete, the plaintiffs filed a letter with the court to inform it that another outbreak had occurred in late 2014. The letter stated that the plaintiffs had learned of this outbreak in the course of their

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

"ongoing investigation," and that "[t]his additional information further demonstrates that defendants . . . knew about, or recklessly disregarded, Chipotle's food-borne illness outbreaks by at least December 2014 and Chipotle's deficient ingredient traceability program during the Class Period." Plaintiffs' Letter dated Nov. 1, 2017, 16-cv-141, Dct. No. 96 at 1.

The defendants filed a letter in response, arguing that the court should not consider the plaintiffs' letter or the additional factual allegations therein. The court agreed. "In the absence of a motion to amend or a motion to convert the pending motion to dismiss into a motion for summary judgment," it said, it could not consider the "newly-proffered factual information." Memo Endorsement filed Nov. 6, 2017, 16-cv-141, Dct. No. 98 at 2.

Two days later, the plaintiffs filed a letter with the court seeking to make clear that they did "not intend to file a motion to amend" the SAC "at this time." It stated in relevant part that

> [the plaintiffs] believe that amendment is premature given the additional evidence Plaintiffs expect to obtain over the next several months . . . , but anticipate moving to amend, if necessary and/or appropriate, once this evidence is received. While we believe that the SAC adequately states a claim and that the pending motion to dismiss will be denied, in the event that the Court dismiss the SAC, Plaintiffs respectfully request that the

16

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

information contained in our November 1 letter be
considered as part of the Court's leave to amend analysis
and that any dismissal be without prejudice.

Plaintiffs' Letter dated Nov. 8, 2017, 16-cv-141, Dct. No. 99. The plaintiffs did not

move to amend thereafter.

On March 22, 2018, the district court granted the defendants' motion to

dismiss. It concluded, *inter alia*, that the plaintiffs had failed to allege adequately

that the defendants knew and failed to disclose that transitioning away from

preparing produce in centralized commissaries would result in an increased risk

of food-borne illness outbreaks. The court concluded that the outbreaks,

including those in December 2014 and early 2015, were not "conclusively tied to a

specific ingredient or supplier," or "to any shift away from commissary produce

processing." Opinion and Order issued Mar. 22, 2018, Special App'x ("SPA") at

95. Any heightened risk of food-borne illness outbreaks resulting from that shift

therefore was only "potential." *Id.* (internal quotation marks omitted).

In the same opinion and order, the district court denied the plaintiffs'

request for leave to file a third amended complaint. While leave to amend

should be freely given "when justice so requires," *id.* at 118 (quoting *McCarthy v.*

*Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)), the district court noted

17

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

that it may be denied if: (1) amendment would be futile, (2) the plaintiff has had ample opportunity to state a claim, or (3) the defendant would suffer undue prejudice as a consequence of further amendment, *see id.* at 119. The district court concluded that there were adequate grounds to deny the application under these principles. First, the court noted that the plaintiffs had had multiple opportunities to cure deficiencies in the pleadings by amendments previously allowed. Second, it stated that the plaintiffs could not assuage its concern that further amendment would be futile because they could not demonstrate that the fruits of their ongoing investigation would cure the deficiencies in their SAC. Finally, the court said that "extending the pleading stage in this litigation indefinitely would cause Defendants undue prejudice given their interest in finality and repose." *Id.* at 120. The court therefore denied the application for leave to amend and granted the defendants' motion to dismiss with prejudice. The following day, the Clerk of Court entered judgment for the defendants and closed the case.

4. *The Plaintiffs' Motion for Relief from the Judgment and for Leave to file a Third Amended Complaint*

On April 20, 2018, the plaintiffs moved in the district court for relief from the judgment, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and

for leave to file a proposed third amended complaint ("PTAC"), pursuant to Rule 15(a)(2).  They sought "relief from the Judgment . . . based on: (a) information received (i) since the SAC was filed, from FOIA requests; and (ii) since the Court dismissed the SAC, from recently unsealed pleadings in related litigation; and (b) other information not considered by the Court in rendering its decision."  Pls. Mem. of Law in Support of Motion, 16-cv-141, Dct. No. 107 at 1.  They argued that the court should grant them leave to file the PTAC because the new allegations it contained "cure the deficiencies perceived by the Court" in the SAC and therefore amendment would not be futile.  *Id.* at 2.

On November 20, 2018, the court denied the motion.  It concluded that the plaintiffs were not entitled to relief because the purported newly discovered evidence — but for a single allegation — was not in fact new for purposes of Rules 59(e) and 60(b).  The court noted that the plaintiffs had received the information prior to entry of the judgment or otherwise failed to make clear when they had received it.  And "the single new fact identified by Plaintiffs [did] not move the needle in favor of reopening the Court's prior decision."  Opinion and Order dated Nov. 20, 2018, SPA at 139.  The court noted, however, that even

if it were to consider the purported new information in the PTAC, the result would not change because the proposed amendment would be futile.

This appeal followed.

## DISCUSSION

On appeal, the plaintiffs-appellants contend only, in sum, that "[i]n denying [their] post-judgment motion for leave to amend[,] the district court applied an incorrect legal standard," and that "[t]he district court erroneously determined that the filing of the PTAC was futile." Appellants' Br. at iii. As to the former, they argue that the court was obliged to consider only the standard that governs pre-trial motions for leave to amend a pleading pursuant to Federal Rule of Civil Procedure 15(a)(2), which states that before trial, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). We conclude that the argument is without merit and that the district court applied the correct legal standard. We also conclude that the district court acted well within its discretion in denying the plaintiffs-appellants' motion. We therefore affirm the judgment of the district court without addressing its alternative holding that amendment would be futile.

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

## I.   Legal Standard

### 1. *Rules 59(e), 60(b), and 15(a)(2)*

"We review the district court's denial of a post-judgment motion for leave to replead for abuse of discretion." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (citations omitted).  "A district court abuses its discretion when it 'bases its ruling on an incorrect legal standard or a clearly erroneous assessment of the facts.'"  *City of New York v. Group Health Inc.*, 649 F.3d 151, 156 (2d Cir. 2011) (quoting *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348 (2d Cir. 2003)).

On appeal, the plaintiffs-appellants argue that the district court applied the wrong legal standard to their post-judgment motion for relief from the judgment and for leave to file an amended complaint.  They contend that the correct standard is that applicable to *pre*-trial motions for leave to amend a pleading pursuant to Rule 15(a)(2), which requires leave to be freely given unless there is "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Appellants' Br. at 32 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

We disagree. It is well established that "[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "[I]t would be contradictory to entertain a motion to amend the complaint" without "a valid basis to vacate the previously entered judgment." *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Williams*, 659 F.3d at 213 (brackets and internal quotation marks omitted) (quoting *Nat'l Petrochemical*, 930 F.2d at 245).

Rule 59(e) provides that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). A court may grant a Rule 59(e) motion "only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

Cir. 1992)); *see also Hollander v. Members of the Bd. of Regents of the Univ. of N.Y.*,

524 F. App'x 727, 729 (2d Cir. 2013) (summary order).

Rule 60(b) provides that a court may relieve a party from a final judgment

for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). We have described Rule 60(b)(6) as a catch-all provision

that "is properly invoked only when there are extraordinary circumstances

justifying relief, when the judgment may work an extreme and undue hardship,

and when the asserted grounds for relief are not recognized in clauses (1)–(5) of

23

the Rule."  *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (internal citations

omitted).

Notwithstanding the foregoing, the plaintiffs-appellants argue that Rule

15(a)(2) alone governs all post-judgment motions for leave to amend because of

our previous statement in *dicta* that:

> in view of the provision in rule 15(a) that 'leave [to amend] shall be freely given when justice so requires,' it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment.

*Nat'l Petrochemical*, 930 F.2d at 245 (internal citation omitted; brackets in original).

We have considered this *dicta* in two decisions that warrant discussion: *Williams*

*v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011), and *Indiana Pub. Ret. Sys. v. SAIC,*

*Inc.*, 818 F.3d 85 (2d Cir. 2016).

In *Williams*, the district court granted the defendants' motion to dismiss

with prejudice and entered judgment without ever providing the plaintiff with

an opportunity to replead.  *See* 659 F.3d at 211-12.  The plaintiff moved pursuant

to Rules 59(e) and 60(b) to reopen the judgment and obtain leave to amend her

complaint.  *Id.*  The court denied the motion on the grounds that the plaintiff

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

failed to "demonstrate[] any basis" for relief from the judgment and to "explain why she should be granted leave to replead at this stage when she failed to request an opportunity to replead" at an earlier stage in the litigation. *Id.* at 212.

We reversed. We began by recognizing the well-established rule that a plaintiff seeking to amend a complaint post-judgment must first have the judgment vacated pursuant to Rules 59(e) or 60(b). *Id.* at 213. We then observed that "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id.* (quoting *Ruotolo*, 514 F.3d at 191). From these formulations, we reasoned that "post[-]judgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15." *Id.*

We looked to *Foman v. Davis*, 371 U.S. 178 (1962), for authority with respect to this interplay. There, the Supreme Court addressed a post-judgment motion to amend the complaint. *See* 371 U.S. at 179-81. The plaintiff had asserted a claim seeking to enforce an alleged oral agreement regarding the amount she stood to inherit from her father's estate. *See id.* at 179. The district court dismissed the complaint for failure to state a claim on the grounds that the

alleged agreement was unenforceable under the statute of frauds.  *Id.*  Judgment

was entered.  *Id.*  The next day, the plaintiff moved to vacate the judgment and to

amend her complaint to seek recovery in quantum meruit.  *Id.*  The district court

denied the motion without explanation.  *See id.*

The Supreme Court reversed.  It construed the motion as one filed

pursuant to Rule 59(e).  *Id.* at 181.  And, against the backdrop of a plaintiff who

was never afforded an opportunity to replead, the Court stated:

> Rule 15(a) declares that leave to amend "shall be freely
> given when justice so requires"; this mandate is to be
> heeded.  If the underlying facts or circumstances relied
> upon by a plaintiff may be a proper subject of relief, he
> ought to be afforded an opportunity to test his claim on
> the merits.  In the absence of any apparent or declared
> reason—such as undue delay, bad faith or dilatory
> motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of
> the amendment, futility of amendment, etc.—the leave
> sought should, as the rules require, be "freely given."  Of
> course, the grant or denial of an opportunity to amend is
> within the discretion of the District Court, but outright
> refusal to grant leave without any justifying reason
> appearing for the denial is not an exercise of discretion;
> it is merely abuse of that discretion and inconsistent with
> the spirit of the Federal Rules.

*Id.* at 182.  It follows that it is an abuse of discretion to deny a motion under Rule

59(e) — to prevent a "manifest injustice," although the Court did not say so

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

explicitly — when the plaintiff was never given an opportunity to replead in the first place.

It was apparently based on this principle that we reversed the district court's denial of the post-judgment motion to amend in *Williams*. In doing so, we explained that *Foman* "makes unmistakably clear" that a plaintiff need not "seek leave to replead either together with her response to the motion to dismiss, or indeed prior to the district court's entry of judgment." *Williams*, 659 F.3d at 214.

In *Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016), the district court granted in part and denied in part a motion to dismiss a first amended complaint. 818 F.3d at 91. In its decision, the court granted the plaintiffs leave to amend the claims that it dismissed without prejudice. *See id.* The plaintiffs did not file an amendment within the time allotted, however, and proceeded with their claims that had survived the motion to dismiss instead. *Id*. The defendants, meanwhile, moved for reconsideration. *Id*. The court granted the motion for reconsideration and reversed course. *See id*. On reconsideration, the court granted the motion to dismiss in full and dismissed all the plaintiffs' claims with prejudice. *Id*. It then entered judgment for the defendant. *See id*.

The plaintiffs moved to amend or vacate the judgment and to file a proposed second amended complaint. *Id.* The district court denied the motions on the grounds that the plaintiffs had failed to demonstrate any grounds for relief under Rule 60(b) and the proposed amendment would be futile. *Id*. at 92.

We reversed. As in *Williams,* we stated first that a party seeking to file an amended complaint post-judgment must first have the judgment vacated pursuant to Rules 59(e) or 60(b). *Id.* We noted that Rule 60(b) "authorizes a court to grant relief from a final judgment for 'any . . . reason that justifies relief.'" *Id.* at 92 (ellipsis in original) (quoting Fed. R. Civ. P. 60(b)(6)). Then we articulated the formulation from *National Petrochemical*: that "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id.* (quoting *Williams*, 659 F.3d at 213).

We then noted that the district court "denied leave to amend under Rule 60(b)(6) solely on the ground that amendment . . . would be futile, a determination that we review *de novo*." *Id.* (citation and footnote omitted). There, however, we concluded that the amendment would not be futile and reversed without "reach[ing] th[e] issue" of whether the district court abused its

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

discretion in rejecting the plaintiffs' argument that the judgment should be set aside because of newly discovered evidence. *Id.* at 92 n.4.

We decided *SAIC* in light of background principles regarding Rules 59(e) and 60(b), including the *dicta* in *Nat'l Petrochemical*, 930 F.2d at 245. But we did not address directly whether that case was a "proper" one within the meaning of *National Petrochemical*, or indeed what the phrase meant. Nor did we identify any circumstances in the case that would render it "appropriate" to consider the nature of the proposed amendment in determining whether the judgment should be vacated.

Importantly, (1) the district court in *SAIC* had permitted amendment after its first decision on the motion to dismiss; (2) the plaintiffs had not availed themselves of it, but were able to proceed with their surviving claims; (3) on reconsideration, the district court dismissed all the plaintiffs' claims including the theretofore surviving claims with prejudice, prohibiting amendment without providing a justification; and (4) the plaintiffs then were unable to proceed except by motion for relief from the judgment. *See SAIC*, 818 F.3d at 91-92. This history parallels the procedural pattern in *Foman* and *Williams*; the only key distinction in *SAIC* being that the plaintiffs had — and availed themselves of —

29

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

one opportunity to amend while the plaintiffs in *Foman* and *Williams* had none. Notwithstanding this distinction, the cases —*SAIC*, *Foman*, and *Williams* — are consistent.

In the case at bar, by contrast, the plaintiffs had three opportunities to state a claim and had requested a fourth in their opposition to the defendants' motion to dismiss before the district court granted the defendants' motion with prejudice and denied the plaintiffs' request. In dismissing the First Amended Complaint, the district court issued a thorough opinion that identified defects that a second amended complaint should cure. Even with the benefit of that opinion, however, the plaintiffs failed to cure such deficiencies in their Second Amended Complaint. Moreover, the plaintiffs-appellants cite no authority — and we are aware of none — that supports their assertion that the district court was obliged to consider their proposed amendment only under Rule 15(a)(2), effectively replacing the standards under Rules 59(e) and 60(b) with those in Rule 15(a)(2) to decide their post-judgment motion. We conclude that our well-established rule that a plaintiff "seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Rules 59(e) or 60(b)," *SAIC*, 818 F.3d at 92 (quoting *Williams*, 659 F.3d at 213), stands.

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

In the post-judgment context, we have indeed given "due regard" to "the liberal spirit of Rule 15" by ensuring plaintiffs at least one opportunity to replead. *Williams*, 659 F.3d at 213-14. But we have not given *sole* regard to Rule 15. Doing so would allow the "liberal amendment policy of Rule 15(a)" to swallow the "philosophy favoring finality of judgments" whole. *Nat'l Petrochem.*, 930 F.2d at 245 (internal quotation marks omitted). The plaintiffs-appellants' argument that their motion is governed solely by the legal standard applicable to Rule 15(a)(2) motions therefore is without merit.

2. *Newly Discovered Evidence*

On the other side of the proverbial coin, the plaintiffs-appellants argue that the district court erred by considering whether they had presented any newly discovered evidence that would entitle them to relief under Rules 59(e) (which may relate to "the availability of new evidence") and 60(b) (which may, under 60(b)(2), serve to "relieve a party . . . from a final judgment" because of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"). The newly discovered evidence standard, they say, is incorrect not only because it is irrelevant in light of their view that only Rule 15(a)(2) applies to their motion,

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

which we reject for the reasons stated above, but also because it is specific to actions in which judgment was entered following *trial* — not after dismissal on a Rule 12(b)(6) motion.

We are not persuaded.  We recently reiterated that "Rule 60(b) allows relief from a judgment or order when evidence has been newly discovered or for any other reason justifying relief from the operation of the judgment." *Mirlis v. Greer*, 952 F.3d 36, 50 (2d Cir. 2020) (internal quotation marks and citations omitted). Newly discovered evidence must be of "facts that existed at the time of trial *or other dispositive proceeding*." *Id.* (emphasis added) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).  A motion to dismiss is one such dispositive proceeding.  The newly discovered evidence provisions of Rules 59(e) and 60(b) thus apply to the plaintiffs-appellants' post-judgment motion for leave to amend because it was made following grant of a motion to dismiss which, like a trial, is a "dispositive proceeding."  The plaintiffs-appellants' challenge to the legal standard applied by the district court thus fails.

## II.   Application

To repeat, we "review the district court's denial of a post-judgment motion for leave to replead for abuse of discretion." *Williams*, 659 F.3d at 212.

1. *Newly Discovered Evidence*

The district court denied the plaintiffs-appellants' motion principally because it concluded that they failed to proffer any newly discovered evidence that would entitle them to relief under Rules 59(e) or 60(b). The court held also that even if the purported newly discovered evidence was indeed new, the result would be the same because amendment would be futile.

To prevail on a motion for relief from a judgment on the grounds of newly discovered evidence, a party must establish that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). The district court here concluded that — but for a single allegation — the plaintiffs failed to establish the second prong of this test. And, with respect to "the single new fact identified by Plaintiffs," they failed to establish the third prong of the test because the fact "[did] not move the needle in favor of reopening the Court's prior decision." Opinion and

33

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

Order dated Nov. 20, 2018, SPA at 139.

The plaintiffs-appellants do not challenge these conclusions on appeal.[3]  To the extent that the plaintiffs-appellants address them, they contend that they received the new evidence in "drips [sic]-and-drabs over an extended period and without any organization," and that they "needed time to understand and assimilate the information received."  Appellants' Br. at 35.  They further contend that the district court's "charge of 'strategic reticence' was overly rigid and unfair."  *Id.*  These contentions do not amount to an argument that the "new" evidence satisfied the standard for relief pursuant to Rules 59(e) or 60(b).  And we see no abuse of discretion here.

2. *Manifest Injustice or Other Grounds Justifying Relief*

Finally, in the plaintiffs-appellants' reply brief, they ask this court to "vacate the judgment and grant leave to file the PTAC to correct a clear error of law or prevent manifest injustice."  Appellants' Reply Br. at 2 (internal quotation marks omitted).  They suggest also that we vacate the judgment under the catchall provision of Rule 60(b)(6) that encompasses any "reason that justifies

---

[3] Indeed, in the plaintiffs-appellants' reply brief, they assert that they "never argued that the additional allegations constituted 'newly discovered evidence' that would justify post-judgment relief."  Appellants' Reply Br. at 2.

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

relief," and argue that "[t]his approach" would "comport[] with this Court's 'strong preference for resolving disputes on the merits.'" Appellants' Reply Br. at 3 (quoting *Williams*, 659 F.3d at 212-213).

Assuming *arguendo* that they have not waived or forfeited the argument, the plaintiffs-appellants are not entitled to relief on these grounds. First, the plaintiffs-appellants fail to identify any "extraordinary circumstances" that would "justify[] relief" under Rule 60(b)(6). *Nemaizer*, 793 F.2d at 63. Second, unlike in *Foman*, *Williams*, and *SAIC*, the plaintiffs-appellants here were afforded and availed themselves of three opportunities — beyond the original complaint — to state a claim. The district court's denial of the post-judgment motion accordingly rests on no clear error of law. Nor did it cause any injustice, manifest or otherwise; four bites at the apple is more than enough.

It seems to us to be self-evident that a plaintiff afforded attempt after attempt — and consequently, additional time to investigate — might one day succeed in stating a claim. But the federal rules and policies behind them do not permit such limitless possibility. Rules 59(e) and 60(b) serve this purpose. So too

18-3807-cv

*Metzler Investment GmbH and Construction Laborers Pension Trust of Greater St. Louis v. Chipotle Mexican Grill, Inc., et al.*

does Rule 15(a)(2).  Rule 15 is liberal, yes, but it is also temperate.[4]  And Rule 15's

temperate spirit does not necessarily dissolve as soon as judgment is entered.  *Cf.*

*Williams*, 659 F.3d at 214.

Thus, we conclude that the plaintiffs-appellants are not entitled to relief

from the judgment and a fourth opportunity to state a claim.

\* \* \*

It is well settled that we "may affirm on any basis for which there is

sufficient support in the record[.]"  *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*,

753 F.3d 395, 413 (2d Cir. 2014) (internal quotation marks and citation omitted).

Because we conclude that the district court applied the correct legal standard to

the plaintiffs-appellants' post-judgment motion by considering whether the

plaintiffs were entitled to relief under Rules 59(e) or 60(b), and committed no

abuse of discretion in denying the motion on the grounds that the plaintiffs had

failed to identify an adequate basis for relief pursuant to those rules, we do not

reach the district court's alternative holding that amendment would be futile or

---

[4] Under Rule 15(a)(2), leave to amend should be freely given *unless there is "any apparent or declared reason—such as* undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment*, futility of amendment, etc."  *Foman*, 371 U.S. at 182 (emphasis added).

the plaintiffs-appellants' challenge to it. *Cf. Janese v. Fay*, 692 F.3d 221, 229 (2d Cir. 2012) (concluding that the district court "properly denied the motion to amend following its denial of the motion for [relief from the judgment]").

## CONCLUSION

We have considered the plaintiffs-appellants' remaining arguments on appeal and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.